UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
WESLEY C. JONES,

                          Plaintiff,

-against-

JOHN DOE, P.O./DET. #1 and JOHN DOE, P.O./DET. #2;
JANE DOE, ASSISTANT DISTRICT ATTORNEY'S
OFFICE, KEW GARDENS, QUEENS; THE COUNTY
OF QUEENS,

                          Defendants.
------------------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
25-CV-0711(JMA)(ST)

FILED
CLERK
3/24/2025 4:23 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

Before the Court is the civil rights complaint filed by incarcerated *pro se* plaintiff Wesley C. Jones ("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983") against the County of Queens and various unidentified individuals involved in Plaintiff's arrest and the related, on-going state court criminal prosecution.[1] (ECF No. 1.) Plaintiff also filed a motion to proceed *in forma pauperis* ("IFP") and the required Prisoner Litigation Authorization form. (ECF Nos. 2-3.) For the reasons that follow, the Court grants Plaintiff's IFP application and dismisses Plaintiff's Section 1983 claims other than those alleging false arrest without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii) and 1915A(b)(1). The Court stays Plaintiff's false arrest claims pending the conclusion of his state court criminal proceeding as set forth below.

                          **I.     BACKGROUND**[2]

The Complaint, filed while Plaintiff is detained at the Suffolk County Correctional Facility, is brought pursuant to Section 1983 and seeks to challenge his October 22, 2024 arrest, pre-trial

---

[1] Plaintiff alleges he was arraigned under case number Q24648751M on October 23, 2024 and, as of the filing of his Complaint in this Court, the prosecution is pending. (ECF No. 1 at 4.)

[2] All material allegations in the complaint are assumed to be true for the purpose of this Order. See, e.g., Rogers v. City of Troy, New York, 148 F.3d 52, 58 (2d Cir. 1998) (in reviewing a *pro se* complaint for *sua sponte* dismissal, a court is required to accept the material allegations in the complaint as true).

detention at the Kew Gardens precinct, and the pending state court criminal prosecution. (ECF No. 1.)  Plaintiff names as Defendants two detectives alleged to work from the Kew Gardens Precinct ("John Doe #1" and "John Doe #2"), the Assistant District Attorney allegedly employed at the Queens District Attorney's Office ("Jane Doe"), and the County of Queens ("Queens County" and collectively, "Defendants") (Id. at 1, 3.)  Plaintiff alleges that, on October 22, 2024, he was arrested while leaving the First District Court in Suffolk County having been released on his own recognizance on charges unrelated to the challenged arrest.  Plaintiff claims that he was told that there was a "hold" on him and he was then "held in custody in the back holding pen, until two plain clothes Police/Detectives came from Queens, (Kew Gardens) all the way to Suffolk County 1st District Court" and handcuffed him. (Id. at 4.)[3]  Plaintiff alleges that he was placed in an unmarked car and driven to Queens where he was placed in the "Kew Gardens Precinct lock-up" until his arraignment the following day. (Id.)  According to the Complaint, Plaintiff was moved "during the night" to another cell with approximately 18 to 25 other pre-trial detainees "with no mattress, no change of clothes, and only one toilet." (Id.)  Plaintiff claims that the floor was "nasty, filthy, un-mopped, blood and vomit stained." (Id.)  In the morning, Plaintiff was called in the courtroom after consulting with an attorney who was representing him at the arraignment, and learned that he was being charged with a "brutal[] rape and physical[] attack" on "some woman I can't possible know nor have I ever met." (Id.)  Thus, Plaintiff claims that he "has been Falsely Arrested, Illegal and Unlawful imprisonment, and is still being Maliciously Prosecuted for the charges of Rape, Robbery and strangulation under case number Q24648751M." (Id.)

In the space that calls for a description of any injuries sustained and any medical treatment required and/or provided, Plaintiff wrote:

---

[3] Excerpts from the complaint are reproduced herein exactly as they appear in the original.  Errors in spelling, punctuation, and grammar have not been corrected or noted.

2

> The injuries claimant suffered as a direct, sole and proximate result of the false arrest, illegal and unlawful imprisonment and malicious prosecution. The Defendant's: Police Detectives #1 and #2, the A.D.A. of Queens County and the County of Queens are all liable due to the lack of probable cause in arresting claimant and violating plaintiff's Fourth Amendment rights along with the Municipal Liability plaintiff/claimant was caused and did sustain humiliation and embarrassment, severe emotional and mental distress, moral indignity and disgrace, personal injury, inconvenience, pain and suffering, disturbance and disruption of his life. And while no real physical medical treatment was not required, claimant/plaintiff has consulted and been counseled several times by different Psychologist and Psychiatry to aid or help him gain some perspective and balance out the traumatic experience he has suffered!

(Id. at 5.) For relief, Plaintiff seeks to recover a monetary award in the sum of $280,000 in compensatory damages and an additional unspecified sum as punitive damages that he "shall allow the Court or the Jury to decide." (Id. at 5-6.)

## II.    LEGAL STANDARDS

### A.    Leave to Proceed IFP

To qualify for IFP status, the Supreme Court has long held that "an affidavit is sufficient which states that one cannot because of his poverty pay or give security for the costs [inherent in litigation] and still be able to provide himself and dependents with the necessities of life." Adkins v. E.I. Du Pont De Nemours & Co., 335 U.S. 331, 339 (1948) (internal quotation marks omitted). The purpose of the statute permitting litigants to proceed IFP is to ensure that indigent persons have equal access to the judicial system. Davis v. NYC Dep't of Educ., 10-CV-3812, 2010 WL 3419671, at *1 (E.D.N.Y. August 27, 2010) (citing Gregory v. NYC Health & Hosps. Corp., 07-CV-1531, 2007 WL 1199010, at *1 (E.D.N.Y. Apr. 17, 2007)). The determination of whether an applicant qualifies for IFP status is within the discretion of the district court. DiGianni v. Pearson Educ., 10-CV-0206, 2010 WL 1741373, at *1 (E.D.N.Y. Apr. 30, 2010) (citing Choi v. Chemical Bank, 939 F. Supp. 304, 308 (S.D.N.Y. 1996)).

3

### B.     The Prison Litigation Reform Act and the IFP Statute

The Prison Litigation Reform Act requires a district court to screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint, or any portion of the complaint, if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).  Similarly, the IFP statute requires a court to dismiss an action upon determination that the action "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  The Court must dismiss the action as soon as it makes such a determination.  28 U.S.C. § 1915A(b).

### C.     Section 1983

Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979); see Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999).  "To state a claim under § 1983, a plaintiff must allege two elements: (1) 'the violation of a right secured by the Constitution and laws of the United States,' and (2) 'the alleged deprivation was committed by a person acting under color of state law.'"  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87-88 (2d Cir. 2015) (quoting Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004)); see Buon v. Spindler, 65 F.4th 64, 78 (2d Cir. 2023); see also Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (internal quotation marks and citation omitted)).

### D. Plaintiff's *Pro Se* Status

*Pro se* submissions are afforded wide interpretational latitude and should be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997). In addition, the Court is required to read a plaintiff's *pro se* complaint liberally and interpret it as raising the strongest arguments it suggests. United States v. Akinrosotu, 637 F.3d 165, 167 (2d Cir. 2011) (per curiam) (citation omitted); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

The Supreme Court has held that *pro se* complaints need not even plead specific facts; rather the complainant "need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks and citations omitted); see also FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice."). However, a *pro se* plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. While "'detailed factual allegations'" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. at 678 (quoting Twombly, 550 U.S. at 555).

### III. DISCUSSION

### A. Plaintiff's IFP Application is Granted

Upon review of Plaintiff's application to proceed IFP, the Court finds that Plaintiff is qualified to commence this action without prepayment of the filing fee. 28 U.S.C. § 1915(a)(1). Therefore, Plaintiff's application to proceed IFP (ECF No. 2) is granted.

### B. Municipal Liability

Plaintiff's claims against Queens County are deficient. A claim for municipal liability under Section 1983 must comply with Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978) and its progeny. "Monell expressly prohibits *respondeat superior* liability for municipalities . . . meaning that a plaintiff must demonstrate that 'through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.'" Agosto v. N.Y.C. Dep't of Educ., 982 F.3d 86, 97-98 (2d Cir. 2020) (quoting Bd. of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997)). This requires Plaintiff to "show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom." Frost v. New York City Police Dep't, 980 F.3d 231, 257 (2d Cir. 2020) (internal quotations omitted). A policy or custom may be established by any of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular constitutional deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

Alwan v. City of New York, 311 F. Supp. 3d 570, 578 (E.D.N.Y. 2018) (internal quotations omitted); see Ying Li v. City of New York, 246 F. Supp. 3d 578, 636 (E.D.N.Y. 2017) (similar). "[A] single incident of unconstitutional activity is not sufficient to impose liability under Monell,

6

unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy that can be attributed to a municipal policymaker." Mitchell v. City of N.Y., 841 F.3d 72, 80 (2d Cir. 2016) (quoting City of Okla. City v. Tuttle, 471 U.S. 808, 823-24 (1985) (plurality)) (brackets omitted); see DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998) ("[A] single incident in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.").

Here, even affording the *pro se* complaint a liberal construction, there are no factual allegations from which the Court may reasonably infer that the conduct or inaction of which Plaintiff complains was caused by a policy or custom of Queens County. See Mitchell, 841 F.3d at 80 (dismissing Monell claim for lack of a municipal policy or custom underlying the challenged conduct); see also Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) ("[A] plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists."). Accordingly, any Section 1983 claim asserted in the complaint against Queens County fails to state a claim and is thus implausible because Plaintiff has not alleged the existence of a relevant municipal policy or custom. Thus, this claim is dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1).

**C.    Heck's Delayed Accrual Rule**

Plaintiff's Section 1983 claims challenge his arrest, detention and prosecution. (Compl. at 4-5.) However, success on these claims would impugn the validity of a criminal conviction in state court. In Heck v. Humphrey, the United States Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit," the district court must dismiss the complaint if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" and the "conviction or sentence has [not] already been invalidated." 512 U.S. 477, 487 (1994). Interpreting Heck, the Second Circuit has long held that "if success on a § 1983 claim would necessarily imply

7

the invalidity of a conviction in a pending criminal prosecution, such a claim does not accrue so long as the potential for a judgment in the pending criminal prosecution continues to exist." Covington v. City of New York, 171 F.3d 117, 124 (2d Cir. 1999) (citation and alterations omitted).

Plaintiff is a pre-trial detainee. As is readily apparent, success on Plaintiff's claims challenging his arrest, detention, and prosecution would impugn the validity of a subsequent conviction. Thus, these claims are premature. See, e.g., Pascual v. New York State, No. 24-CV-6723, 2024 WL 5046675, at *4 (E.D.N.Y. Dec. 9, 2024); Roberties v. Huff, No. 11-CV-521, 2012 WL 1113479, at *4 (W.D.N.Y Mar. 30, 2012) (dismissing as premature "plaintiff's claims for due process, conspiracy to prosecute, obstruction of justice, fabrication of evidence and equal protection"). Accordingly, Plaintiff's constitutional claims are barred by Heck and its progeny and are thus not plausible at this time and are thus dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1) with the exception of his false arrest claims.

With respect to Section 1983 false arrest claims, the Supreme Court limited the delayed accrual rule of Heck in Wallace v. Kato, 549 U.S. 384 (2007). In declining to apply Heck's delayed accrual rule to false arrest claims because the statute of limitations for such claims "begins to run at the time the claimant becomes detained pursuant to legal process," the Court instructed:

> If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of criminal case is ended.

Id. at 393–94. Here, Plaintiff's false arrest claims implicate Wallace's modification of Heck's delayed accrual rule. Thus, pursuant to Wallace, Plaintiff's false arrest claims are stayed pending the resolution of the underlying criminal prosecution. That said, if he is convicted, Plaintiff's

8

stayed false arrest claim "would impugn that conviction," meaning "*Heck* will require dismissal" of the claim. See Wallace, 549 U.S. at 394 (citations omitted).

Given the stay, Plaintiff shall request, in writing, that the stay be lifted within the two (2) weeks following the conclusion of his state court criminal proceeding, if so warranted at that time. In addition, should Plaintiff seek to pursue any other constitutional claims at that time, including those dismissed without prejudice as set forth above, he shall file an amended complaint also within the two (2) weeks following the conclusion of his state court criminal proceeding. That amended complaint shall be clearly labeled "Amended Complaint" and shall bear the same docket number as this Memorandum and Order, 2:25-CV-00711(JMA)(ST).

### IV.   CONCLUSION

For the forgoing reasons, the Plaintiff's application to proceed IFP is granted. However, Plaintiff's Section 1983 claims other than those alleging false arrest are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii) and 1915A(b)(1). Plaintiff's false arrest claims are stayed and Plaintiff shall request, in writing, that the stay be lifted within the two (2) weeks following the conclusion of his state court criminal prosecution, if warranted at that time. In addition, should Plaintiff seek to pursue any other constitutional claims at that time, he shall file an amended complaint also within the two (2) weeks following the conclusion of his state court criminal proceeding.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is respectfully directed to mail a copy of this Order to Plaintiff at his address of record in an enveloped marked "Legal Mail" and to note such mailing on the docket.

**SO ORDERED.**

Dated:   March 24, 2025
            Central Islip, New York

                                                  /s/ JMA
                                      JOAN M. AZRACK
                                      UNITED STATES DISTRICT JUDGE